UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:15-CR-13-GFVT-HAI-3 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JIMMY L. BARRETT, ) | |
| ) | |
| Defendant. ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 251), the Court considers reported violations of supervised release conditions by Defendant Jimmy L. Barrett.

District Judge Van Tatenhove entered Judgment against Defendant in May 2017 for one count of conspiracy to distribute a substance containing methamphetamine. D.E. 230 (plea agreement); D.E. 233 (Judgment). Defendant was sentenced to 84 months of imprisonment followed by five years of supervised release. D.E. 233 at 2-3. Defendant was released on January 15, 2021.

On February 1, 2021, the United States Probation Office ("USPO") reported that:

> On January 29, 2021, Barrett reported to the U.S. Probation Office in London as directed. He submitted a urine specimen for drug testing purposes which tested positive for the presence of THC, via instant testing device. When confronted with the results, Barrett admitted to smoking marijuana on or about January 17, 2021, and he subsequently signed a Positive Drug Test Admission Report (PROB 4), stating as such.
>
> . . . . When confronted with the positive drug test results, Barrett took full responsibility for his actions and expressed remorse regarding his decision making. Due to Barrett's recent release from BOP jurisdiction, he has yet to begin outpatient substance abuse and mental health counseling with Windows of Discovery.

The USPO requested that no action be taken at that time, and Judge Van Tatenhove approved that request.  D.E. 249.

**I.**

On May 4, 2021, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings.  The Report charges three violations.  According to the Report, Defendant was referred to outpatient treatment on February 2, and that treatment remains ongoing.  However,

> On April 20, 2021, this Officer contacted Barrett, via telephone, and instructed him to report to the office on April 21, 2021.  He verbally acknowledged this Officer's instructions.  Barrett failed to report as instructed on April 21, 2021.
>
> On April 22, 2021, Barrett called this Officer and advised he failed to report the prior day because his girlfriend drugged him, and he could not get up.  He indicated he was scared to report because he did not want to go back to prison.  This Officer subsequently instructed him to report to the office immediately, and he verbally acknowledged this Officer's instructions.  Barrett failed to report as instructed on April 22, 2021.

Based on this behavior, Violation #1 charges a violation of the condition that Defendant "must report to the probation officer as instructed" and the condition that Defendant "must follow the instructions of the probation officer related to the conditions of supervision."  Violation #1 is based on Defendant's failure to report to the office as instructed.  This is a Grade C violation.

Violation #2 charges a Grade C violation of the condition that prohibits Defendant from "any unlawful use of a controlled substance."  According to the Report, "On April 29, 2021, this Officer made contact with Barrett via text messages, and he admitted to using methamphetamine."

Also based on this use of methamphetamine, Violation #3 charges a violation of the condition prohibiting commission of another federal, state, or local crime.  Citing the Sixth

Circuit's decision that use is equivalent to possession, Violation #3 is a Grade B violation because Defendant's methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

After Defendant entered federal custody, the Court conducted an initial appearance pursuant to Rule 32.1 on July 22, 2021. D.E. 255. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not request release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

The final hearing was subsequently continued, at Defendant's request, to conduct additional investigation and clarify Defendant's health status following a possible exposure to COVID-19. D.E. 256, 257.

At the final hearing on September 14, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 266. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. The United States thus established all three violations under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty

3

to conspiracy to distribute a methamphetamine mixture, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1 and #2 and a Grade B violation for Violation #3. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. USSG § 7B1.4(a). However, the 24-month statutory maximum renders his effective Guidelines Range 21 to 24 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the parties presented a jointly recommended disposition: six months of incarceration, followed by a brand-new five-year term of supervised release. The first 90 days of supervised release would be devoted to inpatient drug addiction treatment, which Defendant would be obligated to complete. The Court adopts this recommendation with reservations.

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

There is reason to be skeptical that Defendant warrants such a significant downward departure from the Range. The recommended sentence is a leap of faith made in the hope that Defendant will successfully use the tools provided by inpatient treatment to live a drug-free life in the future.

The government first opined that the Range—driven largely by Defendant's criminal history—was remarkably high for a first offense. The severity of the punishment range overshadowed the severity of Defendant's conduct. The government also noted that Defendant had never received inpatient treatment. Defendant, the government observed, appears keenly interested in obtaining help and having an opportunity to improve his life. Although Defendant initially tried to hide his drug use, the government argued that, when confronted, he admitted his meth use without the presence of a positive drug test. The government found this mitigating and encouraging. The government stressed that it would not recommend a below-Guidelines sentence on any future violations. But it hoped these proceedings would be a wake-up call and the subsequent mandatory inpatient treatment would make Defendant, who is now 43 years old, a "productive member of society."

The defense agreed with the government's points. According to the defense, while incarcerated in Laurel County, Defendant reached out several times to obtain an assessment for treatment. In other words, Defendant's behavior (including his admission to the probation officer and his proactive investigation of treatment options) demonstrates he is serious about overcoming addiction. The defense pointed out that Defendant was on release for only a short time (from January 15 to his arrest on May 18). During this period, he had both the prior marijuana use and the methamphetamine use. The defense argued that, unlike in many revocation cases, Defendant's problems were being caught and addressed in the early stages.

Defendant addressed the Court. He said he has been asking for rehab since the beginning of supervision. He said he was unable to do the RDAP program in prison because he was never in a facility with RDAP for a long enough period to enroll in the program. Defendant explained that he has been using drugs since childhood. He "grew up in a family of drugs." But he regrets his addiction. He says he cannot remember a happy day, and many days he does not remember at all. He has missed out on being present with his children and now his grandchildren. He told the Court he wants inpatient treatment because he wants to know if it will help him. When pressed by the Court about his level of commitment to overcoming addiction, he said "I can do it."

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court

shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Based on the description in his PSR, Defendant was involved in a years-long methamphetamine distribution conspiracy. But he does not appear to have been a major player.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant has a criminal history category of VI. His history includes several emergency DVO violations, aggravated assault, domestic violence assault, four DUIs, driving on a suspended/revoked license, burglary, theft, marijuana possession, resisting arrest, bail jumping, fleeing/evading, leaving the scene of an accident, and convictions for contempt of court. During his brief supervision period in this case, Defendant was previously reported for using marijuana. On the other hand, Defendant has been a drug addict since before he was an adult, and his drug use has doubtless contributed to his history of violence and trouble with the law. *See* PSR ¶ 133. There is an obvious need here to deter future criminal conduct and protect the public from Defendant's previous pattern of bad behavior.

Another factor focuses on opportunities for education and treatment. Here, the joint recommendation includes a mandatory 90-day inpatient drug abuse treatment program upon release as the initial portion of his five-year supervision period.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction

primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant was shown grace when his marijuana use did not result in revocation proceedings. Defendant then used methamphetamine and initially tried to hide it. However, he soon fessed up (without the need for a drug test) and began asking for treatment. The parties believe he is serious about starting over with new tools to fight his addiction.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence of six months. This is below the Guidelines Range of 21-24 months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, the Court adopts, with reservations, the parties' jointly recommended below-Guidelines sentence. The first reason this sentence is appropriate is because Defendant has not yet received intensive addiction treatment. Assuming that he is serious about reform and that his prior unlawful behavior is driven by his drug abuse, enabling him to overcome his addiction could be the best way to protect the public and deter future criminal conduct. Second, the Guidelines Range is highly punitive in this case due to Defendant's criminal history category.

Overpunishing him would not be productive. Defendant's breach of the Court's trust, which is the most important sentencing factor, is not so severe that it warrants 21 months or more of incarceration. Defendant used meth and, upon being confronted, confessed. He has asked for treatment, even initiating an assessment from within the jail. Thus, significant mitigating facts exist in this case.

Accordingly, the Court adopts the parties' recommendation. It is sufficient but not greater than necessary, to address the pertinent penalty factors. As the Court stressed to Defendant, overcoming drug addiction will require more hard work than anything he has ever done. If he works hard and succeeds, then hopefully he can prove the Court wrong in its skepticism that the lenient sentence is appropriate.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of all three violations.

2. Revocation with a term of imprisonment of six months.

3. Upon release, imposition of a new five-year period of supervision under the conditions previously imposed (D.E. 233) with the added condition that, upon his release, Defendant be enrolled in a 90-day inpatient drug addiction treatment program. Defendant is required to complete the program as a condition of his release. The 90-day period is part of his new term of supervision.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with

the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocation, he **SHALL** do so on or before the deadline for filing objections.

This the 15th day of September, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge