UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>JIMMY L. BARRETT, )<br>)<br>   Defendant. ) | No. 6:15-CR-13-GFVT-HAI-3<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 276), the Court considers reported violations of supervised release conditions by Defendant Jimmy L. Barrett. This is his second revocation.

District Judge Van Tatenhove entered Judgment against Defendant in May 2017 for one count of conspiracy to distribute a substance containing methamphetamine. D.E. 230 (plea agreement); D.E. 233 (Judgment). Defendant was sentenced to 84 months of imprisonment followed by five years of supervised release. D.E. 233 at 2-3. Defendant was released on January 15, 2021.

On February 1, 2021, the United States Probation Office ("USPO") reported that:

> On January 29, 2021, Barrett reported to the U.S. Probation Office in London as directed. He submitted a urine specimen for drug testing purposes which tested positive for the presence of THC, via instant testing device. When confronted with the results, Barrett admitted to smoking marijuana on or about January 17, 2021, and he subsequently signed a Positive Drug Test Admission Report (PROB 4), stating as such.
>
> . . . . When confronted with the positive drug test results, Barrett took full responsibility for his actions and expressed remorse regarding his decision making. Due to Barrett's recent release from BOP jurisdiction, he has yet to

> begin outpatient substance abuse and mental health counseling with Windows of Discovery.

The USPO requested that no action be taken at that time, and Judge Van Tatenhove approved that request. D.E. 249. Defendant was referred to outpatient treatment on February 2.

On May 4, 2021, the USPO issued a report that charged Defendant with failing to follow the instructions of the probation officer, unlawful use of a controlled substance (which Defendant admitted), and committing the crime of methamphetamine possession. According to that report,

> On April 20, 2021, this Officer contacted Barrett, via telephone, and instructed him to report to the office on April 21, 2021. He verbally acknowledged this Officer's instructions. Barrett failed to report as instructed on April 21, 2021.
>
> On April 22, 2021, Barrett called this Officer and advised he failed to report the prior day because his girlfriend drugged him, and he could not get up. He indicated he was scared to report because he did not want to go back to prison. This Officer subsequently instructed him to report to the office immediately, and he verbally acknowledged this Officer's instructions. Barrett failed to report as instructed on April 22, 2021.

At the final hearing on September 14, 2021, Defendant admitted all three violations. D.E. 267 at 3. His release was revoked, and he was sentenced to six months of imprisonment, followed by five years of supervised release, to include enrollment in a 90-day inpatient drug-addiction treatment program upon release. *Id*. at 9; D.E. 271. Defendant was released again on November 17, 2021.

## I.

On December 9, 2021, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report,

> On November 17, 2021, Barrett was released from the Laurel County Detention Center in London, Kentucky, where he served the entirety of his federal

2

sentence following the revocation of his supervised release. Barrett called this Officer from a friend's residence he had walked to and advised he was just released from custody. Barrett reported he did not receive prior notification he was being released from custody and, therefore, did not have transportation or a residence arranged. Barrett indicated he was attempting to make contact with his mother to see if she could pick him up, and he advised he was going to ask her if he could reside with her temporarily. This Officer reminded Barrett he has a special condition of supervision ordering him to immediately enroll in and successfully complete a ninety-day inpatient drug addiction program; however, because the U.S. Probation Office was not given a release date from the BOP, a bed date was unable to be prearranged. This Officer advised Barrett I would be immediately contacting the Crossroads men's inpatient treatment facility in Corbin, Kentucky, to secure a bed date, and he was instructed to call back later that afternoon for an update.

Later on November 17, 2021, Barrett called this Officer as instructed. He was advised a bed date was secured for him at Crossroads on November 29, 2021, at 10:00 a.m., and he verbally acknowledged. Barrett indicated he still had not been able to make contact with his mother. This Officer instructed Barrett to call this Officer tomorrow, November 18, 2021, to provide an update as to where he will be residing prior to the bed date at Crossroads. He was told when he called the next day we would schedule an appointment date for him to report to the office for his intake.

On November 18, 2021, Barrett failed to call this Officer as instructed.

On November 29, 2021, Barrett failed to report to Crossroads for his bed date as instructed.

The Report states that the Probation Officer has had no contact with Defendant since November 17.

Based on these reported facts, Violation #1 charges a violation of the condition that Defendant "must report to the probation officer as instructed" and the condition that Defendant "must follow the instructions of the probation officer related to the conditions of supervision." Violation #1 is based on Defendant's failure to report to the office as instructed. This is a Grade C violation.

Violation #2 charges a Grade C violation of the special condition that Defendant "must enroll in and successfully complete a ninety-day inpatient drug addiction treatment program upon release."

On February 7, 2022, the USPO released an Addendum to the Report. According to the Addendum,

> On February 5, 2022, the London Police Department charged Barrett in Laurel County District Court, London, Kentucky, case #22-F-057, with Charge 1) Possession of Controlled Substance, First Degree, First Offense (Methamphetamine) (KRS 218A.1415, a Class D felony); and Charge 2) Possession of Drug Paraphernalia (KRS 218A.500(2), a Class A misdemeanor).

According to the arrest citation, London Police officers were dispatched to an apartment complex, where they found Defendant already under arrest by the Marshals Service on the warrant issued subsequent to the Report. Upon searching Defendant, the Marshals found "two clear containers containing a white crystal like substance believed to be methamphetamine and a glass pipe containing a white residue on the above subject. The above stated to London Officers that the Methamphetamine was his." According to the public docket, a grand jury indicted Defendant on these two charges.

Violation #3 in the Addendum charges a violation of the condition that prohibits Defendant from unlawful possession of a controlled substance and the condition that Defendant not commit another federal, state, or local crime. Because first-degree possession (methamphetamine) is a felony under Kentucky law, Violation #3 is a Grade B violation.

After Defendant entered federal custody, the Court conducted an initial appearance pursuant to Rule 32.1 on February 8, 2022. D.E. 279. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not

request release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

The final hearing was originally scheduled for March 10. But, at the hearing, Defendant moved to continue. D.E. 282. Defense counsel explained that both sides had just learned that body camera footage of the arrest existed. Also, a preliminary hearing was recently held in the state matter, in which the arresting officer testified. And the defense wished to obtain a transcript before proceeding on this federal matter.

At the final hearing on March 31, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 283. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. The United States thus established all three violations under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute a methamphetamine mixture, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original

sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1 and #2 and a Grade B violation for Violation #3. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months. USSG § 7B1.4(a). However, the 24-month statutory maximum renders his effective Guidelines Range 21 to 24 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the parties presented a jointly recommended disposition: 21 months of incarceration, with no additional supervised release to follow.

The government argued that a sentence near (but not at) the top of the Range was appropriate in this case. Defendant has a serious criminal history, including violence and DUIs along with fleeing, absconding, and contempt. Given this history, along with his failures on supervision, there is a strong need to protect the public, deter criminal conduct, and address the severe breach of the Court's trust. The "only tool" left to address these issues is incarceration.

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

On the other hand, the government argued, the recommended sentence was a "big jump" from his previous six-month revocation sentence. And Defendant had been "pretty forthcoming from the get-go" about his guilt on these violations.

The government argued Defendant has a "terrible history on release," both state and federal. Defendant is facing his third "series" of violation incidents, all of which occurred within a year of release. Supervision can only work if Defendant "buy[s] in" and cooperates. Because Defendant has not done so, and is not expected to, the government argued that additional supervision would be a bad use of limited resources.

The defense argued that Defendant should be given credit for stipulating because Violation #3 could have resulted in a "mini trial" that expended more of the government's resources. The defense stated that Defendant is getting married soon and has a child on the way. The defense also argued that Defendant has been given a five-year sentence on a state revocation charge, which means he will be imprisoned beyond the sentence imposed in this case.

Defendant declined to address the Court concerning the jointly recommended penalty.

**IV.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and

7

imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Based on the description in his PSR, Defendant was involved in a years-long methamphetamine distribution conspiracy. But he does not appear to have been a major player. Of course, any additional drug use by Defendant is a red flag that raises the possibility of a return to the drug trafficking culture.

The Court next considers Defendant's history and characteristics and the need to deter criminal conduct and protect the public. Defendant has a criminal history category of VI. His history includes several emergency DVO violations, aggravated assault, domestic violence assault, four DUIs, driving on a suspended/revoked license, burglary, theft, marijuana possession, resisting arrest, bail jumping, fleeing/evading, leaving the scene of an accident, and convictions for contempt of court. During his first brief supervision period in this case, Defendant was reported for using marijuana, with no revocation proceedings initiated. And this is his second revocation that includes methamphetamine use. The Court previously observed that Defendant has been a drug addict since before he was an adult, and his drug use has doubtless contributed to his history of violence and trouble with the law. *See* PSR ¶ 133. Last time, Defendant appeared serious about overcoming his addiction issues. This led the Court to

impose a lenient revocation sentence and arrange for inpatient treatment immediately upon his release. Although logistical problems beyond his control prevented Defendant from entering treatment immediately, he stopped communicating with his Probation Officer and missed his placement. As the Court noted at the hearing, nothing has changed since last time to Defendant's benefit. There is an obvious need here to deter future criminal conduct and protect the public from Defendant's previous pattern of bad behavior.

Another factor focuses on opportunities for education and treatment. At Defendant's request, the Court previously imposed a mandatory 90-day inpatient drug abuse treatment program upon release. Defendant squandered this opportunity and did not argue for additional treatment this time.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant has severely breached the Court's show of trust. On his first period of release, Defendant was shown grace when his marijuana use did not result in revocation proceedings. Defendant then used methamphetamine and initially tried to hide it. However, he soon fessed up (without the need for a drug test) and began asking for treatment. The Court placed trust in him and arranged for the treatment he requested. Now, he has absconded from supervision, skipped treatment, and used methamphetamine again. A severe imprisonment penalty is warranted.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

The Court also agrees with the parties that there is little likelihood Defendant will comply with supervision in the future. Additional supervision is not a reasonable use of the government's resources.

Accordingly, the Court adopts the parties' recommendation. It is sufficient but not greater than necessary, to address the pertinent penalty factors. Defendant requested placement in a facility with a "drop yard" or "free yard." This is a type of lower-security supervision available in some prisons. The Court explained it has no control over Defendant's security level within the BOP.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of all three violations.

2. Revocation with a term of imprisonment of 21 months with no supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 1st day of April, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge